**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **RAMTIN SABET,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 16 CV 10783** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **THE CITY OF NORTH CHICAGO,** | ) | |
| **ILLINOIS; RICHARD WILSON,** | ) | <u>**Jury Trial Requested**</u> |
| **in his individual and official capacity;** | ) | |
| **and JAMES JACKSON, in his individual and** | ) | |
| **official capacity,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**FIRST AMENDED COMPLAINT**</u>

Plaintiff, RAMTIN S. SABET ("Plaintiff"), by and through his attorney, Phillip J. Robertson, of the Council on American-Islamic Relations, Chicago Office (CAIR-Chicago), complaining of Defendants, THE CITY OF NORTH CHICAGO, ILLINOIS, CHIEF RICHARD WILSON, in his individual and official capacity, and CHIEF JAMES JACKSON, in his individual and official capacity ("Defendants"), states as follows:

<u>**NATURE OF THE CASE**</u>

1.    Plaintiff seeks redress for the violation of rights guaranteed to him by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended, 42 U.S.C. § 1983, and the Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq.*, as a result of retaliation, discrimination (based on national origin, ethnicity, and religion), a hostile work environment, wrongful discipline, inadequate training, and retaliatory termination that he suffered during his employment with the North Chicago Police Department.

## JURISDICTION AND VENUE

2.     Plaintiff alleges violations of his civil rights under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983; therefore, jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f).

3.     On April 20, 2016, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

4.     The EEOC issued a Notice of Right to Sue on Plaintiff's charge on August 24, 2016, which was received on August 29, 2016.

5.     The violations alleged herein occurred in the Northern District of Illinois; therefore, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## PARTIES

6.     Plaintiff RAMTIN S. SABET is an Iranian Muslim man who currently resides in Illinois, and is an officer with the North Chicago Police Department.

7.     Defendant CITY OF NORTH CHICAGO, ILLINOIS, is a municipal entity in the State of Illinois, County of Lake, and the NORTH CHICAGO POLICE DEPARTMENT is a subdivision of the CITY OF NORTH CHICAGO and the employing agency of Plaintiff. Defendants are employers for the purposes of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b), as Defendants employed fifteen (15) or more employees for each working day for twenty (20) or more calendar weeks in the current and preceding calendar years.

8.     Defendant JAMES JACKSON was the Police Chief for the North Chicago Police Department until September 2016, and was at all relevant times acting under color of State law. He was a policy-maker for the Department, and is being sued in his individual and official capacities.

2

9.     Defendant RICHARD WILSON is the current Police Chief for the North Chicago Police Department, having taken over for Defendant JAMES JACKSON in September 2016, and was at all relevant times acting under color of State law. He is a policy-maker for the Department, and is being sued in his individual and official capacities.

## ALLEGATIONS COMMON TO ALL DEFENDANTS

10.     Plaintiff has been a Police Officer with the North Chicago Police Department since 2007.  Throughout his employment, he has performed his duties as a Police Officer in accordance with the Defendants' legitimate expectations.

11.     In his position, Plaintiff regularly works with other members of the North Chicago Police Department including, but not limited to: Officer Keith Farrell (White), Officer Corey Friel (White), Officer Timothy Malak (White), and Detective Michael Mueller (White).

12.     Plaintiff's superiors include Sergeant Ray Hartmann (White), Sergeant Luis Rivera (Hispanic), Sergeant Corey Marquardt (White), Sergeant Valiza Nash (African-American), Lieutenant Richard Theis (White), Defendant Chief Richard Wilson (African-American), and Defendant Former Chief James Jackson (African-American).

13.     Throughout his employment as a Police Officer, Plaintiff has been constantly harassed as a result of his Iranian origin and for being a practicing Muslim.

14.     Plaintiff has both informally and formally complained to his superiors, including those listed above in Paragraph 12; however, Plaintiff's complaints have gone largely unaddressed.

15.     In 2012, after repeatedly being called a terrorist by his co-workers over the years, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in order to put an end to the harassment. Defendants did not take Plaintiff's complaint seriously; in

3

fact, the Chief of Police at the time, James Jackson, was asleep during Plaintiff's interview regarding his complaints. In 2013, the EEOC concluded its investigation, but did not provide a remedy. Plaintiff was told by the EEOC that there were no findings in the case and that the matter was closed. However, the harassment has not stopped.

16.     Defendants have continuously failed to take any measures to ensure that Plaintiff is treated fairly and respectfully by his peers and superiors. Consequently, the harassment has become increasingly pervasive and egregious.

17.     Plaintiff has begun taking note of some of the constant discrimination that he faces while working for Defendants. The harassment Plaintiff is forced to endure on a regular basis includes, but is not limited to: name-calling; accusations that Plaintiff is a terrorist; mocking of Plaintiff's food; and insults that are discriminatory toward Plaintiff's ethnicity, national origin, and religion.

18.     Plaintiff is a devout Muslim.  Many officers of the North Chicago Police Department have continuously harassed Plaintiff on this basis, primarily by making insulting and discriminatory comments either directly to Plaintiff or purposefully in his presence.

19.     In 2014, while at the shooting range for firearms training, numerous officers made comments about Plaintiff based on his religion. Some of the officers involved include Sergeant Marquardt, Detective Mueller, and Sergeant Rivera.  Some of the comments made were:

     a.  "Ram [(Plaintiff)] is teaching at the Al-Qaeda camp in Iran; that's why he is so good at shooting."

     b.  "Al-Qaeda leader from Iran works at NCPD."

     c.  "F***ing terrorist." Plaintiff recalls that this comment was made by Officer William Bogdala.

d.  Plaintiff was also asked why he moved to the United States several times by other officers, including Sergeant Hartmann, Officer Bogdala, and Officer Wail. The officers were insinuating that because he is Iranian and Muslim, Plaintiff is worthy of suspicion and/or is some kind of threat.

20.     On or about June 17, 2015, Officer Friel asked Plaintiff, "Hey Sabet, how the hell did you pass a background check for your gun license? How the hell did the FBI grant you a gun permit?" Officer Friel was referring to the fact that Plaintiff is Muslim, insinuating that Plaintiff is a security risk and a terrorist.

21.     On or about June 24, 2015, Officer Friel and Officer Farrell called Plaintiff a "goat f***er."

22.     On or about July 2, 2015, Officer Farrell made a comment that Plaintiff was "an ISIS leader working as a police officer."

23.     On or about July 15, 2015, Detective Mueller made a statement to the effect of "we've got an ISIS leader as a police officer here."

24.     On or about July 17, 2015, during the Islamic holy month of Ramadan, Officer Farrell stated that it is "bullshit that Obama allowed Muslims to put a green light on the Empire State Building for Ramadan." When Plaintiff inquired into why Officer Farrell would make such a statement, he replied that all Muslims kill Christians and provoke violence.

25.     On or about July 17, 2015, Officer Farrell told Plaintiff that he has a neighbor who is Muslim. He stated that the neighbor would always yell "Jamal underjayee" to his son. He asked Plaintiff if he knew what that meant. Plaintiff told him he did not. During the rest of the shift, anytime Officer Farrell saw Plaintiff, he yelled "underjayee," and laughed.

26.     On or about September 10, 2015, Officers Farrell and Friel repeatedly commented that "all Muslims kill Christians and provoke violence," and that "Mohammed was a pimp and a child molester." Officer Friel stated that all Muslims hate Jews. Plaintiff told Officer Friel that Islam is a religion of peace, and asked him to stop saying such things. However, the harassment continued.

27.     On or about November 13, 2015, Officer Farrell commented on Plaintiff's off-duty business of selling firearms, asking how the hell the FBI granted him a firearms license to sell guns considering he is a terrorist.

28.     On or about December 14, 2015, Officers Farrell and Friel were discussing how they allegedly had sex with prostitutes while they were in Las Vegas for a Fraternal Order of Police convention. Plaintiff asked the officers to stop speaking about this because it was an integrity issue, and that they could lose their jobs. They replied that this was not Iran, that the United States is not a Muslim State, and that they could do whatever they wanted and have fun.

29.     On or about January 7, 2016, Officer Friel asked Plaintiff, in a very hostile manner, why Muslims are so violent. Plaintiff asked Officer Friel to stop. Officer Friel then asked Plaintiff if Muslims hate Jews. When Plaintiff asked Officer Friel why he was asking such questions, he responded that he was part Jewish and that he was worried. Plaintiff asked Officer Friel once again to stop asking such questions, and that Plaintiff does not have hostile feelings toward anyone or any religion.

30.     On or about January 7, 2016, Officer Farrell again commented on Plaintiff's off-duty business of selling firearms, and asked, "How the hell did the FBI grant you a license to sell guns?" Officer Farrell accused Plaintiff of supplying arms to terrorists. Plaintiff was very offended and knew that Officer Farrell would not stop, so he simply walked away.

6

31. On or about January 7, 2016, Officer Friel approached Plaintiff at the Department and asked why Muslims hated Jews. Plaintiff told him that this was not true, and that Plaintiff has many Jewish friends. Plaintiff asked Officer Friel whether he hated Muslims, because he certainly made a lot of comments against them throughout their time working on the same shift. Officer Friel said that he did not hate Muslims, he just thought that "Islam is bull***t and provoked violence."

32. On or about January 14, 2016, Sergeant Rivera and Detective Mueller both teased Plaintiff based on his religion, and stated, "There is a Muslim porn star; do you know her?"

33. Plaintiff has been called Islamic slurs and insulted because of his religion numerous times in the presence of his shift commander, Lieutenant Richard Theis, who has taken absolutely no action to stop the harassment. Not only does he ignore Plaintiff's requests, but he also refuses to acknowledge that this is occurring despite the fact that Plaintiff has repeatedly brought it to the Lieutenant's attention.

34. Plaintiff is an Iranian-American. All of his co-workers are aware of this. Plaintiff has also been persistently harassed by other police officers on the basis of his nationality. Discriminatory and hostile comments are often made directly to Plaintiff or purposefully in his presence.

35. In 2013, some of the many discriminatory and offensive comments made by officers at the North Chicago Police Department included:

a. "Go eat your falafel and hummus." This statement was made as an insult against Plaintiff's ethnicity.

b. Plaintiff was, on at least one occasion, called "falafel-head."

    c.    In January 2013, Officer Sain asked Plaintiff, "What are you eating, camel balls?" Officer Sain was insinuating that Plaintiff eats camel testicles because he is Iranian.

36.    In 2014, while at the shooting range for firearms training, numerous officers made insulting comments about Plaintiff based on his nationality. Some of these comments were:

    a.    "He rides his goat to work."

    b.    Detective Mueller called out that Plaintiff's winter hat was made of "camel wool," with the intent of poking fun at Plaintiff because he is Iranian.

    c.    Plaintiff was also asked why he moved to the United States several times by other officers. The officers were insinuating that because he is Iranian and Muslim, he is worthy of suspicion and/or is some kind of threat.

37.    On or about May 18, 2015, Officer Farrell approached Plaintiff during roll call at the North Chicago Police Department and asked if he was eating "goat balls." Officer Farrell implied—in the presence of other officers, including Plaintiff's superiors—that because Plaintiff is Iranian, he eats goat testicles.

38.    On or about May 19, 2015, Officer Friel approached Plaintiff and asked if he had ever tried "camel balls." Officer Friel's comment was meant to insult Plaintiff on the basis of his Iranian origin by implying that he eats camel testicles.

39.    On or about June 17, 2015, Officer Friel asked, "Hey Sabet, how the hell did you pass a background check for your gun license? How the hell did the FBI grant you a gun permit?" Officer Friel was referring to the fact that Plaintiff is Iranian, insinuating that he is a security risk and a terrorist.

40.     On or about June 24, 2015, Officers Friel and Farrell approached Plaintiff while he was eating Iranian food during briefing, and in the presence of others, including Plaintiff's superiors, called Plaintiff a "goat f***er."

41.     On or about July 2, 2015, Officer Farrell asked Plaintiff, "Hey Sabet, have you ever eaten camel meat? Is it good? Does it make you smarter?" Officer Farrell was making fun of Plaintiff based on his Iranian nationality.

42.     On or about July 17, 2015, Officer Farrell openly stated in Plaintiff's presence that "Iran should be nuked and wiped off the map. I don't know why the United States doesn't end it once and for all."

43.     On or about August 21, 2015, Officer Malak stated, "Sabet eats sand for breakfast," in the presence of a number of officers. Officer Malak was insulting Plaintiff based on his Iranian, Middle-Eastern origin.

44.     On or about August 24, 2015, Officer Farrell, Officer Friel, and Officer Malak were publicly harassing Plaintiff on the basis of his Iranian nationality. During some of the harassment, the officers were at a public restaurant. The officers made offensive statements, including: "What's with your people burning the American flag?" "Iran should be nuked," and "One American soldier can kill a hundred Iranian soldiers; we should just kill them all."

45.     On or about November 12, 2015, Officer Friel and Officer Farrell insulted Plaintiff by saying, "What are you eating there, Sabet? Camel's ass?" This offensive statement, based on Plaintiff's Iranian nationality, was made during roll call—in the presence of other officers and Plaintiff's superiors.

46.     On or about January 7, 2016, Officer Friel asked Plaintiff, "Why are your f***ing people burning down the Saudi Arabian embassy in Iran?" Offended, Plaintiff told Officer Friel

that he does not live in Iran now and has no idea what happens there.  Plaintiff asked him to

please stop saying offensive things, but to no avail.

47.     On or about January 14, 2016, Sergeant Rivera and Detective Mueller told

Plaintiff to "go f**k [his] goats."  The officers also announced, "Sabet drinks goat milk and

f***s his goats before coming to work," in the presence of other officers.

48.     On or about January 28, 2016, Officers Friel and Farrell made several offensive

comments about Plaintiff's nationality and food in the presence of Sergeant Nash, including, but

not limited to: "Are you eating goat balls?" "Stop eating goat meat. You are going to look like a

goat soon," and "What's that smell? Durka durka durka, is that curry?"  These comments

resulted in Sergeant Nash documenting the misconduct.  Plaintiff also took the opportunity to

address the issue with everyone and to ask them to stop making such comments, again to no

avail.

49.     On or about February 12, 2016, Plaintiff was ordered to report to a meeting with

Lieutenant Theis.  When he went to the office, Plaintiff was confronted by Lieutenant Theis, Ben

Gehrt, a labor attorney with the City of North Chicago, and Sergeant Hartmann, who is the Vice

President of Plaintiff's Union.  Plaintiff was told that the meeting was related to racial comments

made against him. However, it soon turned into an interrogation accusing Plaintiff of making

discriminatory racial comments against Jews, which he has not done and which he denied during

the meeting.

50.     The interrogation on February 12, 2016, was a violation of Plaintiff's Officer Bill

of Rights.  Plaintiff was not given an opportunity to choose his own representative, which would

have been an attorney, and not Sergeant Hartmann – as he is friendly with the officers who have

been discriminating against Plaintiff.

51.    On or about February 19, 2016, Sergeant Hartmann informed Plaintiff that Ben Gehrt stated Plaintiff was dishonest during his interview on February 12, 2016, and that Plaintiff was trying to portray himself as the victim.  Plaintiff was told that if he insisted on not admitting to making such statements, he would face discipline and possible termination, and that his privilege for second employment would be revoked by the Chief of Police.

52.    Defendants then initiated an internal investigation into Plaintiff, threatening to terminate Plaintiff if he did not admit to making discriminatory comments and accept an appropriate punishment.  At one point, Defendants offered to close the investigation if Plaintiff dropped his pending EEOC charge against them.

53.    On information and belief, no action has been taken against the officers who have discriminated against Plaintiff over several years, despite much of the harassment occurring in the presence of Plaintiff's supervisors, and despite Plaintiff's countless complaints and requests to put an end to the hostility.

54.    On November 2, 2016, Plaintiff was placed on administrative leave for an indefinite period of time based on the allegations fabricated against him in retaliation for his complaints regarding the discriminatory harassment.

55.    Defendants' current disciplinary charges and investigation of Plaintiff are a vehicle for retaliating against Plaintiff for his repeated complaints against a number of officers employed by Defendants for the constant discrimination and hostility Plaintiff continues to experience in his employment with Defendants.

56.    On February 9, 2017, Defendants handed Plaintiff a letter stating that he was being discharged from the Department for allegedly testifying untruthfully during the initial disciplinary hearing that was called to investigate the charges Plaintiff originally brought against

11

the Department officers who harassed and discriminated against him. Plaintiff did not testify untruthfully at any hearings about his discrimination complaints.

57.     The letter stated that the Department's termination of Plaintiff was effective immediately. Thus, on February 9, 2017, Plaintiff was terminated from the Department because he allegedly testified falsely at the hearing which was convened to address his complaints against his fellow officers and supervisors -- complaints which were never resolved or even addressed by Defendants. Plaintiff was wrongfully disciplined and terminated by Defendants in an effort to convince him to drop his discrimination complaints against the Department and his fellow officers and supervisors.

58.     Furthermore, as result of his numerous complaints, Plaintiff has been denied the opportunity to advance in his career as a law enforcement officer.

59.     On information and belief, Defendants have consistently failed to provide Plaintiff with the opportunity to attend training courses that would develop his skills and allow him to grow and advance in his position, while Defendants have instead provided such opportunities to the very officers who have been harassing and discriminating against Plaintiff.

60.     Defendants have not allowed Plaintiff to become a Field Training Officer, despite Plaintiff's requests to become one.

61.      Defendants have also not allowed Plaintiff to participate in a Firearm Instructor's course taught by the Federal Bureau of Investigation.  Plaintiff requested to attend the course, and was told by Lieutenant Theis that the North Chicago Police Department was not sending anyone to that training.  Plaintiff subsequently signed up for the training using his own personal time and money.  Shortly thereafter, Plaintiff was ordered to not attend that training, and another officer from the North Chicago Police Department was sent, taking Plaintiff's spot.

62.     Defendants, by and through Lieutenant Theis, have repeatedly denied Plaintiff's request to attend supervisor school, and have instead sent Sergeant Ray Hartmann and Sergeant Luis Rivera.  Plaintiff was not provided with a sufficient reason for his denial.  In or around April 2015, Plaintiff asked why he was not chosen to go to supervisor school.  Lieutenant Theis claimed that Plaintiff was a "piss poor" officer and falsely claimed that the Department had to pay a lot of money to settle his lawsuits.  When Plaintiff inquired about these alleged lawsuits, Lieutenant Theis became angry and simply kept saying, "That's beside the point."

63.     On information and belief, Defendants are also considering taking disciplinary action against Plaintiff for allegedly using Police Department resources for personal business in violation of Department policies.  On occasion, Plaintiff has used computers owned by the North Chicago Police Department to research information on firearms for training purposes.  Plaintiff has never spent more than ten minutes of any shift on such matters.

64.     On information and belief, other non-Iranian, non-Muslim officers have regularly used Department computers for personal business, and have not been disciplined.

65.     For example, Sergeant Rivera, who is Hispanic, earned his Bachelor's Degree online using North Chicago Police Department computers to take his courses almost daily for three years.  He was not disciplined.

66.     Officer Mejia, who is Hispanic, has printed out invoices and vacation reservations using North Chicago Police Department computers and printers.  He has not been disciplined.

67.     Sergeant Marquardt, who is Caucasian, has watched home improvement videos on North Chicago Police Department computers for the past three months.  He has watched female Mixed Martial Arts fights on North Chicago Police Department computers.  He has been caught sleeping in his office.  He has not been disciplined.

13

68.     Sergeant Hartmann, who is Caucasian, regularly uses North Chicago Police Department computers for playing fantasy football. He has not been disciplined.

69.     Officer Friel, who is Caucasian, regularly uses North Chicago Police Department computers for playing fantasy football. He has not been disciplined.

70.     Officers on the second shift regularly use North Chicago Police Department computers to post on social media, including Facebook and Twitter. They have not been disciplined.

71.     As noted above, Defendants also seek to discipline Plaintiff for allegedly making discriminatory statements against those of Jewish faith.

72.     On information and belief, Defendants have not disciplined Officers Friel, Farrell, or Malik, all of whom are Caucasian, despite the fact that they have admitted to making discriminatory and derogatory comments about Plaintiff and to Plaintiff over the years.

## COUNT I – TITLE VII – RELIGIOUS DISCRIMINATION

73.     Plaintiff re-asserts and re-alleges paragraphs one (1) through seventy-two (72) as if fully set forth herein.

74.     Defendants subjected Plaintiff to a hostile work environment based on his religion, Islam, through severe and pervasive actions and inactions, thereby negatively altering the conditions of his employment and creating an abusive working environment.

75.     Despite knowledge of the harassing treatment of Plaintiff, Defendants failed to take any appropriate action to prevent or correct the discriminatory work conditions imposed upon Plaintiff.

76.     Defendants discriminated against Plaintiff when they failed to take appropriate

14

action even after receiving numerous complaints from Plaintiff about the harassment, thereby allowing the hostile work environment to continue.

77.     The aforementioned acts and omissions of Defendants were willful and wanton, reckless, and malicious acts of unlawful discrimination against Plaintiff in violation of the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.*

78.     As a direct and proximate result of Defendants' actions and omissions, Plaintiff has suffered emotional distress, lost wages and benefits, and other consequential damages.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, RAMTIN S. SABET, requests that this Honorable Court enter judgment in his favor and against Defendants, and enter an Order awarding the following relief:

A.  All wages and benefits he would have received but for the discrimination;

B.  Compensatory damages;

C.  An award of costs, as provided by F.R.C.P. 54(d)(1);

D.  An award of reasonable attorney's fees, as provided by 42 U.S.C. § 2000e-5(k); or 42 U.S.C. § 1988(b);

E.  Declaratory and injunctive relief to abate the harassment of Plaintiff; and

F.  Such other and further relief as this Honorable Court deems equitable and just.

### **COUNT II – TITLE VII – NATIONAL ORIGIN AND/OR ETHNIC DISCRIMINATION**

79.     Plaintiff re-asserts and re-alleges paragraphs one (1) through seventy-two (72) as if fully set forth herein.

80.     Defendants subjected Plaintiff to a hostile work environment based on his ethnicity and national origin, Middle-Eastern Iranian, through severe and pervasive actions and

inactions, thereby negatively altering the conditions of his employment and creating an abusive working environment.

81.     Despite knowledge of the harassing treatment of Plaintiff, Defendants failed to take any appropriate action to prevent or correct the discriminatory work conditions imposed upon Plaintiff.

82.     Defendants discriminated against Plaintiff when they failed to take appropriate action even after receiving numerous complaints from Plaintiff about the harassment, thereby allowing the hostile work environment to continue.

83.     The aforementioned acts and omissions of Defendants were willful and wanton, reckless, and malicious acts of unlawful discrimination against Plaintiff in violation of the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.*

84.     As a direct and proximate result of Defendants' actions and omissions, Plaintiff has suffered emotional distress, lost wages and benefits, and other consequential damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, RAMTIN S. SABET, requests that this Honorable Court enter judgment in his favor and against Defendants, and enter an Order awarding the following relief:

A.  All wages and benefits he would have received but for the discrimination;

B.  Compensatory damages;

C.  An award of costs, as provided by F.R.C.P. 54(d)(1);

D.  An award of reasonable attorney's fees, as provided by 42 U.S.C. § 2000e-5(k); or 42 U.S.C. § 1988(b);

E.  Declaratory and injunctive relief to abate the harassment of Plaintiff; and

F.  Such other and further relief as this Honorable Court deems equitable and just.

## COUNT III – TITLE VII – RETALIATION

85.     Plaintiff re-asserts and re-alleges paragraphs one (1) through seventy-two (72) as if fully set forth herein.

86.     Plaintiff engaged in statutorily protected activity pursuant to Title VII by filing a charge of discrimination against Defendants with the EEOC in 2012, by making countless informal complaints to his superior officers at the North Chicago Police Department about the harassment and discrimination he faced, and by filing a second charge of discrimination against Defendants with the EEOC in April 2016.

87.     Defendants were aware of Plaintiff's 2012 EEOC charge, his 2016 EEOC charge, and his numerous informal complaints about harassment since 2012.

88.     Defendants retaliated against Plaintiff by fostering hostile work conditions of employment and by treating Plaintiff less favorably than similarly situated employees. Specifically, Defendant has not provided Plaintiff the same training and advancement opportunities as other non-Muslim officers. Defendants ultimately terminated Plaintiff for bringing his EEOC charges and making complaints about the harassment.

89.     The aforementioned acts and omissions of Defendants were willful and wanton, reckless, and malicious acts which constitute unlawful retaliation due to Plaintiff's opposition to Defendants' discriminatory practices, in violation of the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, as amended.

90.     As a direct and proximate result of Defendants' actions and omissions, Plaintiff has suffered emotional distress, lost wages and benefits, and other consequential damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, RAMTIN S. SABET, requests that this Honorable Court enter

judgment in his favor and against Defendants, and enter an Order awarding the following relief:

    A.  All wages and benefits he would have received but for the discrimination;

    B.  Compensatory damages;

    C.  An award of costs, as provided by F.R.C.P. 54(d)(1);

    D.  An award of reasonable attorney's fees, as provided by 42 U.S.C. § 2000e-5(k); or 42 U.S.C. § 1988(b);

    E.  Declaratory and injunctive relief to abate the harassment of Plaintiff; and

    F.  Such other and further relief as this Honorable Court deems equitable and just.

## COUNT IV – TITLE VII – DENIAL OF TRAINING AND PROMOTION OPPORTUNITIES

91.    Plaintiff re-asserts and re-alleges paragraphs one (1) through seventy-two (72) as if fully set forth herein.

92.    Plaintiff has been a highly commended officer with the Department for nearly 10 years, having almost no disciplinary issues.

93.    On numerous occasions, Plaintiff has requested leave for training and education related to his job performance, and has been repeatedly denied those opportunities by the Department.

94.    Despite his record and experience, the Department has sent less-qualified non-Muslim, non-Iranian officers instead of him to training seminars paid for by the Department.

95.    Plaintiff has been forced to spend his own money to attend such training courses, even though they are directly related to his performance as a police officer, and has had to attend such courses on his own personal time.

96.     Promotions within the Department are based not only on experience and job performance, but on training as well, and therefore, the lack of such training has a direct adverse impact on Plaintiff's ability to advance in his career at the Department.

97.     Plaintiff believes the Department's consistent denial of training opportunities to him was in fact a deliberate effort to keep him from applying for and attaining a higher rank within the Department, due to his religion and national origin/ethnicity.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, RAMTIN S. SABET, requests that this Honorable Court enter judgment in his favor and against Defendants, and enter an Order awarding the following relief:

A.  All wages and benefits he would have received but for the discrimination;

B.  Compensatory damages;

C.  An award of costs, as provided by F.R.C.P. 54(d)(1);

D.  An award of reasonable attorney's fees, as provided by 42 U.S.C. § 2000e-5(k); or 42 U.S.C. § 1988(b);

E.  Declaratory and injunctive relief to abate the harassment of Plaintiff; and

F.  Such other and further relief as this Honorable Court deems equitable and just.

**COUNT V – SECTION 1983 – DISCRIMINATORY PRACTICE**

98.     Plaintiff re-asserts and re-alleges paragraphs one (1) through seventy-two (72) as if fully set forth herein.

99.     The 14th Amendment prohibits governmental entities from denying to any person within their jurisdiction the equal protection of the laws.  Additionally, Section 1983 prohibits discriminatory policies and practices by governmental entities such as Defendants. 42 U.S.C. §

1983.

100.   As shown above, the discrimination experienced by Plaintiff and caused by Defendants was severe and pervasive, occurring constantly and repeatedly over a period of years.

101.   Plaintiff's supervisors, including his immediate supervisor and all those within his direct chain of command (including the Defendant Police Chiefs, his Shift Commander, and numerous Sergeants), were aware of the harassment and discrimination Plaintiff had been experiencing for many years while a police officer at the North Chicago Police Department.

102.   While Plaintiff's supervisors and chain of command were aware of the harassment and the hostile work environment at the Department, they did nothing to limit, decrease, condemn, discourage, or even investigate it.

103.   Not only did the officers who participated in the abuse not get disciplined for their misconduct by the Department's policy-makers, but those same policy-makers rewarded the abusive officers by promoting them and offering them training opportunities, while Plaintiff was not promoted nor offered any such opportunities.

104.   The Department's policy-makers were not only aware of the discrimination, but also tacitly condoned it by failing to take any action against the abusers.

105.   None of the abusers are Muslim, and the non-Muslim offenders (including fellow officers and supervisors) were not mis-treated by Defendants like Plaintiff.  Their harassment of Plaintiff constitutes disparate treatment in violation of the 14th Amendment.

106.   The Department's persistent inaction in addressing the harassment of Plaintiff constitutes a practice of the Department which is proscribed by Section 1983.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, RAMTIN S. SABET, requests that this Honorable Court enter judgment in his favor and against Defendants, and enter an Order awarding the following relief:

A.  All wages and benefits he would have received but for the discrimination;

B.  Compensatory damages;

C.  Punitive damages;

D.  An award of costs, as provided by F.R.C.P. 54(d)(1);

E.  An award of reasonable attorney's fees, as provided by 42 U.S.C. § 1988(b);

F.  Declaratory and injunctive relief to abate the harassment of Plaintiff; and

G.  Such other and further relief as this Honorable Court deems equitable and just.

**COUNT VI – SECTION 1983 – RETALIATORY TERMINATION**

107.    Plaintiff re-asserts and re-alleges paragraphs one (1) through seventy-two (72) as if fully set forth herein.

108.    The 14th Amendment prohibits governmental entities from making or enforcing any law which abridges the privileges or immunities of citizens, and from depriving citizens of liberty or property without the due process of law.  Section 1983 prohibits the deprivation of any rights, privileges, or immunities secured by the Constitution and the laws and, consequently, prohibits retaliation in hiring and firing decisions made by governmental entities such as Defendants. 42 U.S.C. § 1983.

109.    Plaintiff had no disciplinary issues prior to February 2016 when the administrative hearing was held to address his concerns of discrimination.

110.    At the hearing, he raised issues regarding his treatment by fellow officers and

21

supervisors that he had already been telling Defendants about for many months.

111.    After the hearing, Plaintiff was accused of making insensitive remarks to fellow officers, an allegation he flatly denied at the hearing and since then.  The allegations of discrimination he raised were not resolved or even addressed by Defendants.

112.    In April 2016, when he realized that Defendants were not taking his concerns seriously, Plaintiff filed a charge with the EEOC.  Defendants became aware of the charge in late April or early May.

113.    Since then, Plaintiff has been subjected to further discipline by Defendants in an attempt to pressure him to drop his EEOC charge and his internal complaints of discrimination. More false charges and allegations regarding his job performance were manufactured and added to the disciplinary charges leveled against him.

114.    At one point, Defendants offered Plaintiff a one-day suspension if he admitted to making the derogatory comments and dropped his EEOC complaint.

115.    When Plaintiff refused to lie and admit wrongdoing and drop his charge, other settlement offers were made to Plaintiff by Defendants.

116.    Plaintiff declined to accept any subsequent offers since they all required him to falsely admit wrongdoing and stop pursuing his discrimination allegations against Defendants and his fellow officers.

117.    When Defendants realized that Plaintiff would not accept any offer on the false allegations manufactured by Defendants and would not stop pursuing his complaints of discrimination, they terminated Plaintiff in retaliation.

118.    Plaintiff's termination in retaliation for raising these issues is in clear violation of the 14th Amendment and Section 1983.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, RAMTIN S. SABET, requests that this Honorable Court enter judgment in his favor and against Defendants, and enter an Order awarding the following relief:

    A.  All wages and benefits he would have received but for the discrimination;

    B.  Compensatory damages;

    C.  Punitive damages;

    D.  An award of costs, as provided by F.R.C.P. 54(d)(1);

    E.  An award of reasonable attorney's fees, as provided by 42 U.S.C. § 1988(b);

    F.  Declaratory and injunctive relief to abate the harassment of Plaintiff; and

    G.  Such other and further relief as this Honorable Court deems equitable and just.

## **COUNT VII – MONELL CUSTOM, PRACTICE, POLICY AND PROCEDURES**

119.    Plaintiff re-asserts and re-alleges paragraphs one (1) through seventy-two (72) as if fully set forth herein.

120.    Defendants have a duty and obligation to properly train, supervise, and discipline their police officers to prevent them from violating the civil rights of others through the power and authority they have under the color of State law.

121.    Defendants have failed to properly train, supervise, and discipline their officers, which has therefore given them the comfort and sense that they can violate the civil rights of others and not be disciplined.

23

122.     This lack of training, supervision, and discipline fosters a climate in the ranks of the North Chicago Police Department that if an individual's rights are violated, they do not have to report it, can look the other way, and maintain a code of silence.

123.     Since Plaintiff has been an officer, the North Chicago Police Department has had a code of silence within the ranks, and a wide-spread practice of failing to investigate and/or discipline officers who engage in misconduct.

124.     This persistent and defiant code of silence was a moving force behind the Defendants' actions and inactions complained of herein.

125.     The City of North Chicago and its Police Department have a duty to properly train their police officers for sensitivity to religious expression and religious freedom.

126.     Defendants have failed to provide proper training to, and supervision of, their police officers.

127.     As a result of the customs, policies, and practices of Defendants (including the failure to properly train and supervise its police officers), Defendants have ignored the civil rights of Plaintiff.

128.     As a result of the customs, policies, and practices of Defendants, the unlawful discrimination committed against Plaintiff went un-investigated and un-disciplined.

129.     Consequently, Plaintiff's rights were violated in a long-standing climate of abuse and harassment by Defendants.

130.     As a result of Defendants' discriminatory actions and inactions, Plaintiff suffered lost wages and benefits, fear, insult, pain, suffering, emotional distress, physical distress, humiliation, anxiety, and embarrassment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, RAMTIN S. SABET, requests that this Honorable Court enter judgment in his favor and against Defendants, and enter an Order awarding the following relief:

A.  All wages and benefits he would have received but for the discrimination;

B.  Compensatory damages;

C.  Punitive damages;

D.  An award of costs, as provided by F.R.C.P. 54(d)(1);

E.  An award of reasonable attorney's fees, as provided by 42 U.S.C. § 2000e-5(k); or 42 U.S.C. § 1988(b);

F.  Declaratory and injunctive relief to abate the harassment of Plaintiff; and

G.  Such other and further relief as this Honorable Court deems equitable and just.

## COUNT VIII – DISCRIMINATION UNDER THE ILLINOIS HUMAN RIGHTS ACT

131.    Plaintiff re-asserts and re-alleges paragraphs one (1) through seventy-two (72) as if fully set forth herein.

132.    The Illinois Human Rights Act prohibits discrimination on the basis of religion and national origin/ancestry. 775 ILCS 5/1-101 *et seq.*

133.    As described above, Plaintiff was subjected to numerous incidents of discrimination based on his religion, Islam, and his national origin/ancestry, Middle Eastern, while working as a police officer for the North Chicago Police Department.

134.    Defendants were aware of the harassment and discrimination, yet failed to take any action to deter or abate it.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, RAMTIN S. SABET, requests that this Honorable Court enter judgment in his favor and against Defendants, and enter an Order awarding the following relief:

A.  All wages and benefits he would have received but for the discrimination;

B.  Compensatory damages;

C.  Punitive damages;

D.  An award of costs, as provided by the Act;

E.  An award of reasonable attorney's fees, as provided by the Act;

F.  Declaratory and injunctive relief to abate the harassment of Plaintiff; and

G.  Such other and further relief as this Honorable Court deems equitable and just.


## COUNT IX -- RETALIATION UNDER THE ILLINOIS HUMAN RIGHTS ACT

135.    Plaintiff re-asserts and re-alleges paragraphs one (1) through seventy-two (72) as if fully set forth herein.

136.    The Illinois Human Rights Act prohibits retaliation for filing charges with the Equal Employment Opportunity Commission ("EEOC"). 775 ILCS 5/6-101 *et seq.*

137.    As described above, Plaintiff was subjected to numerous incidents of discrimination based on his religion, Islam, and his national origin/ancestry, Middle Eastern, which lead him to file charges with the EEOC in 2012 and in April 2016.

138.    Plaintiff was retaliated against by his co-workers and his supervisors for filing charges with the EEOC, and for making Defendants aware of the discrimination through his numerous informal complaints to his supervisors over the years.

139.    As part of the retaliation, false charges were fabricated and brought against

Plaintiff by Defendants to intimidate him and pressure him to withdraw his 2016 EEOC charge.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, RAMTIN S. SABET, requests that this Honorable Court enter judgment in his favor and against Defendants, and enter an Order awarding the following relief:

A. All wages and benefits he would have received but for the discrimination;

B. Compensatory damages;

C. Punitive damages;

D. An award of costs, as provided by the Act;

E. An award of reasonable attorney's fees, as provided by the Act;

F. Declaratory and injunctive relief to abate the harassment of Plaintiff; and

G. Such other and further relief as this Honorable Court deems equitable and just.

## COUNT X – RETALIATORY DISCHARGE

140. Plaintiff re-asserts and re-alleges paragraphs one (1) through seventy-two (72) as if fully set forth herein.

141. Under Illinois law, all that is required to state a claim for the tort of retaliatory discharge is that the employer discharge the employee in retaliation for the employee's protected activities, and that the discharge be in contravention of a clearly mandated public policy.

142. Plaintiff had no disciplinary issues prior to February 2016 when the administrative hearing was held to address his concerns of discrimination.

143. At the hearing, he raised issues regarding his treatment by fellow officers and

27

supervisors that he had already been telling Defendants about for many months.

144.    After the hearing, Plaintiff was accused of making insensitive remarks to fellow officers, an allegation he flatly denied at the hearing and since then.  The allegations of discrimination he raised were not resolved or even addressed by Defendants.

145.    In April 2016, when he realized that Defendants were not taking his concerns seriously, Plaintiff filed a charge with the EEOC.  Defendants became aware of the charge in late April or early May.

146.    Since then, Plaintiff has been subjected to further discipline by Defendants in an attempt to pressure him to drop his EEOC charge and his internal complaints of discrimination.  More false charges and allegations regarding his job performance were manufactured and added to the disciplinary charges leveled against him.

147.    At one point, Defendants offered Plaintiff a one-day suspension if he admitted to making the derogatory comments and dropped his EEOC complaint.

148.    When Plaintiff refused to lie and admit wrongdoing and drop his charge, other settlement offers were made to Plaintiff by Defendants.

149.    Plaintiff declined to accept any subsequent offers since they all required him to falsely admit wrongdoing and stop pursuing his discrimination allegations against Defendants and his fellow officers.

150.    When Defendants realized that Plaintiff would not accept any offer on the false allegations manufactured by Defendants and would not stop pursuing his complaints of discrimination, they discharged Plaintiff in retaliation.

151.    Plaintiff's discharge in retaliation was in contravention of a clearly mandated public policy in Illinois prohibiting discrimination in employment on the basis of religion.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, RAMTIN S. SABET, requests that this Honorable Court enter judgment in his favor and against Defendants, and enter an Order awarding the following relief:

A.  All wages and benefits he would have received but for the discrimination;

B.  Compensatory damages;

C.  Punitive damages;

D.  An award of costs, as provided under Illinois law;

E.  An award of reasonable attorney's fees, as provided under Illinois law;

F.  Declaratory and injunctive relief to abate the harassment of Plaintiff; and

G.  Such other and further relief as this Honorable Court deems equitable and just.

## **JURY TRIAL DEMAND**

Plaintiff hereby requests a jury trial on all issues of fact and law raised by the allegations contained in this Complaint.

Respectfully Submitted,

RAMTIN S. SABET
Plaintiff


BY:   /s/ Phillip J. Robertson_____
One of his Attorneys




Phillip J. Robertson, Esq.
Attorney for Plaintiff
Council on American-Islamic Relations,
Chicago Office (CAIR-Chicago)
17 North State St., Suite 1500
Chicago, IL 60602
Phone: 312-212-1520
FAX:  312-212-1530
probertson@cair.com
Atty. No. 6209869