UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAMTIN SABET, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 16 C 10783 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| THE CITY OF NORTH CHICAGO, ) | |
| ILLINOIS, and RICHARD WILSON, in his ) | |
| individual and official capacity, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

The Court grants in part, denies in part, and reserves ruling in part on Plaintiff Ramtin Sabet's motions *in limine* [154] and grants in part, denies in part, and reserves ruling in part on Defendants City of North Chicago's ("City"), and Richard Wilson's motions *in limine* [158]. See Statement.

**STATEMENT**

I.  **Sabet's Motions in Limine**

  1.  **Motion to preclude mention of source of payments for any judgments**

Sabet asks the Court to preclude any reference as to the source of payment for any judgment that may be issued in this case. Defendants do not object to Sabet's motion, so the Court grants Sabet's motion *in limine* number 1.

  2.  **Motion to preclude mention or inference of bankruptcy**

Sabet asks the Court to bar any mention or inference that any of the Defendants might file for bankruptcy, is currently bankrupt, or would be unable to pay any judgment against them. The Defendants do not object to Sabet's motion, so the Court grants Sabet's motion *in limine* number 2.

  3.  **Motion to preclude mention that Sabet failed to call a witness or produce evidence**

Sabet asks the Court to bar any argument or suggestion that Sabet failed to produce a witness or any other evidence without obtaining a ruling from the Court that it will instruct the jury in accordance with 7th Circuit Pattern Civil Jury Instruction No. 1.19 against Sabet.

Defendants do not object to Sabet's motion, so the Court grants Sabet's motion *in limine* number 3. The Court will apply this restriction to Sabet as well, so he cannot argue or suggest that Defendants failed to produce a witness or other evidence without himself requesting the same instruction against Defendants.

### 4. Motion to preclude argument that Sabet manufactured or hid evidence

Sabet asks the Court to bar any argument, statement, suggestion, or implication that he manufactured evidence or that he is hiding evidence. Defendants concede that they will not baselessly argue that Sabet hid or manufactured evidence, but they object on the grounds that they do not wish to waive their ability to cross-examine Sabet if they believe he lies from the stand, which they contend can be construed as "manufacturing" or "hiding" evidence. The Court does not interpret Sabet's motion *in limine* to request the Court to restrict the scope of cross-examination regarding issues that Sabet fairly puts into play, so the Court grants Sabet's motion *in limine* number 4. If at trial Defendants believe that Sabet has manufactured or hid evidence by, *inter alia*, lying from the stand, they should inform the Court outside the presence of the jury before cross-examining him on that subject.

### 5. Motion to preclude Defendants' witnesses from stating that no credible evidence supports Sabet's claims

Sabet asks the Court to bar Defendants' witnesses from insinuating that no "credible evidence" supports his claims. Defendants offer to instruct their witnesses not to say the words, "there is no credible evidence to support the plaintiff's claims," but they otherwise object because they are concerned with the potential scope of the phrase "credible evidence," believing that it may limit them in their questioning of witnesses about evidence that contradicts Sabet's liability and damages claims.

The Court will exclude testimony that is unhelpful to the jury. *See* Fed. R. Evid. 403. It is not helpful for the jury to have witnesses tell them what result to reach or how to weigh evidence—that is the jury's function. *Cf., e.g.*, *United States v. Noel*, 581 F.3d 490, 497 (7th Cir. 2009) (holding that an expert witness cannot "merely tell the jury what result to reach."). Accordingly, witnesses cannot tell the jury, point blank, that no credible evidence supports Sabet's claims (or, in the other direction, that all the evidence supporting Sabet's claims is credible). However, it is obviously helpful for the jury to hear all relevant evidence and testimony, even if that testimony contradicts or casts doubt on other evidence. Because the Court does not know at this time how the parties will question the witnesses, the Court grants in part and reserves ruling in part on Sabet's motion *in limine* number 5. The Court precludes witnesses from telling the jury how to weigh evidence. To the extent either party believes that testimony or a line of questioning invades the province of the jury, they should raise an appropriate objection at that time.

### 6. Motion to exclude witnesses other than the parties from viewing the trial

Sabet asks the Court to exclude all witnesses from the courtroom other than the parties during the trial. Defendants do not object to Sabet's motion, so the Court grants Sabet's motion *in limine* number 6.

### 7. Motion to treat all non-Defendant City police officers as hostile witnesses

Sabet asks the Court for permission to treat all non-Defendant City police officers as hostile witnesses under Federal Rule of Evidence 611(c)(2). Defendants object because they do not believe that all of the City's employees are hostile to Sabet and claim that the treatment of various City employees as hostile or not hostile should be determined on a case-by-case basis.

Rule 611(c) allows parties to use leading questions on direct examination "[w]hen a party calls a hostile witness, an adverse party, or a witness identified with an adverse party." Fed. R. Civ. P. 611(c). "The normal sense of a person 'identified with an adverse party' has come to mean, in general, an employee, agent, friend, or relative of an adverse party." *Washington v. State of Ill. Dep't of Revenue*, No. 1 C 3300, 2006 WL 2873437, at *1 (C.D. Ill. Oct. 5, 2006) (quoting *Vanemmerik v. The Ground Round, Inc.*, No. 97 C 5923, 1998 WL 474106, at *1 (E.D. Pa. 1998)). The City's police officers are employees of the City, one of Sabet's adverse parties. Thus, Rule 611 permits him to use leading questions when directly examining them. The Court grants Sabet's motion *in limine* number 7.

### 8. Motion to preclude use of leading questions on adverse witnesses

Sabet asks the Court to preclude Defendants from asking leading questions of adverse witnesses he calls on the theory that Defendants may only examine, not cross-examine, such witnesses. Defendants do not object to Sabet's motion, so the Court grants Sabet's motion *in limine* number 8.

### 9. Motion to preclude argument that Sabet manufactured or hid evidence

This motion *in limine* duplicates Sabet's motion *in limine* number 4. The Court adopts the same ruling here.

### 10. Motion to preclude Defendants' witnesses from stating that no credible evidence supports Sabet's claims

This motion *in limine* duplicates Sabet's motion *in limine* number 5. The Court adopts the same ruling here.

3

### 11. Motion to permit the jury to submit written questions to each witness after each witness' examination

Sabet asks the Court to permit the jury to submit written questions to each witness following the witness' examination, arguing that the Seventh Circuit's American Jury Project found that such jury questioning during trial helped the jury's understanding of the facts and recommended such procedures. Defendants object, arguing that no legal authority supports Sabet's position and that allowing jurors to ask questions of witnesses would result in them obtaining irrelevant information, hearsay, and other information that the Court would typically exclude.

The Seventh Circuit has held that "the district court may, in its discretion, allow jurors to propose questions to be put to the witnesses." *United States v. Sykes*, 614 F.3d 303, 312 (7th Cir. 2010). This Court, in its discretion, does not allow jurors to question witnesses in writing, or otherwise. Accordingly, it denies Sabet's motion *in limine* number 11.

### 12. Motion to preclude mention or evidence of negative consequences on Wilson's and Jackson's careers

Sabet asks the Court to bar Defendants from introducing evidence or arguments that Wilson or other involved police officers would suffer negative professional consequences due to the trial's outcome. The Defendants do not object to Sabet's motion, so the Court grants Sabet's motion *in limine* number 12.

### 13. Motion to preclude reference that Sabet is asking for a higher judgment than he expects to receive

Sabet asks the Court to bar Defendants from referring to, particularly in closing argument, Sabet asking for a larger monetary award than he actually expects the jury to award him. Defendants do not object to Sabet's motion, so the Court grants Sabet's motion *in limine* number 13.

### 14. Motion to preclude reference that Sabet's damage request "shocks" Defendants

Sabet asks the Court to bar Defendants or their counsel from saying or insinuating in any way that they are "shocked" by his damages request. Defendants do not object to Sabet's motion, so the Court grants Sabet's motion *in limine* number 14.

### 15. Motion to preclude stipulation requests in presence of jury

Sabet asks the Court to refrain from requesting stipulations in the jury's presence. Defendants do not object to Sabet's motion, so the Court grants Sabet's motion *in limine* number 15.

**16. Motion to exclude evidence of Defendants' commendations, awards or honors**

Sabet asks the Court to exclude any evidence commendations, awards, or honors that Defendants have received as irrelevant and prejudicial. Defendants object, arguing that they anticipate Sabet will introduce evidence of his own career achievements, commendations, and awards he has received as a police officer, and that fairness demands they be permitted to introduce such evidence on their own behalf in response.

Character evidence is not permitted to show that a person acted in accordance with a positive trait on a given occasion. *See* Fed. R. Evid. 404(a). But evidence of Sabet's commendations, awards, and honors is relevant to support the inference that his superiors denied him certain opportunities that equally- or worse-performing officers received or fired him because of his nationality and religion, not to prove that he acted in a certain manner during the time he alleges his co-officers harassed him.

By contrast, commendations, awards, or honors that the City or Wilson received would only constitute self-serving reputational evidence. Wilson, the City's Chief of Police, is not a proper comparator for Sabet, so evidence of his awards cannot be the basis for denying Sabet's claim that the City denied him training opportunities. *See Warren v. Solo Cup Co.*, 516 F.3d 627, 630–31 (7th Cir. 2008) ("An employee is similarly situated if the employee is comparable to the plaintiff in all *material* respects." (internal quotations omitted)). Nor would any awards the City has received be relevant for this purpose since the City is obviously not a proper comparator either. Accordingly, the Court views any of the Defendants' awards as only self-serving reputational and propensity evidence and excludes it.

The Court grants Sabet's motion *in limine* number 16.

**17. Motion to exclude mention or use of Plaintiff's prior lawsuits**

Sabet asks the Court to bar Defendants from mentioning or using prior lawsuits by or against him, especially his lawsuit against Northwestern University, because these lawsuits may be construed as propensity evidence and be unduly prejudicial. Defendants object to preserve their ability to cross-examine Sabet should he represent that he has never sued another employer or has never made claims akin to the claims in this case. Because the Court cannot determine the relevance of Sabet's prior lawsuits to the Defendants' cross-examination at this time, it reserves ruling on Sabet's motion *in limine* number 17. Sabet's counsel should object at trial to specific lines of questioning, pieces of evidence, or attorney argument, and the Court will rule on any objections at that time.

## II.  Defendants' Motions in Limine

### 1.  Motion to exclude non-party witnesses from courtroom

Defendants ask the Court to exclude non-party witnesses from the courtroom. Sabet does not object to Defendants' motion, which is duplicative of his motion *in limine* number 6. The Court grants Defendants' motion *in limine* number 1.

### 2.  Motion to bar attorneys from conferring with witnesses under oath

Defendants ask the Court to preclude attorneys from conferring with witnesses about their trial testimony during the course of their testimony (such as during recesses). Sabet does not object. The Court grants Defendants' motion *in limine* number 2.

### 3.  Motion to preclude reference that the City may indemnify Wilson

Defendants ask the Court to prevent Sabet from introducing any evidence or argument that the City will indemnify Wilson. Sabet does not object to Defendants' motion, "unless the Defendants open the door." Doc. 165 at 1. The Court understands this to mean that Sabet does not intend to raise the City's indemnification of Wilson unless Defendants somehow raise it themselves.[1] The Court will not preliminarily limit Sabet's ability to respond to arguments the Defendants raise, so it grants Defendants' motion *in limine* number 3 subject to the understanding that the prohibition applies unless and until Defendants themselves put the issue in play.

### 4.  Motion to preclude reference that Wilson would be personally responsible for compensatory damages award

Defendants ask the Court to bar any evidence, testimony, and argument that Wilson will be personally responsible for paying a compensatory damages award. Sabet does not object. The Court grants Defendants' motion *in limine* number 4.

### 5.  Motion to preclude reference to dismissal of any party

Defendants ask the Court to prohibit any reference to the dismissal of any party, such as former defendant James Jackson, from this case. Sabet does not object to Defendants' motion, so the Court grants Defendants' motion *in limine* number 5, and will further restrain Sabet from mentioning the presence of any prior claims against Jackson.

### 6.  Motion to preclude reference to settlement or offer of judgment discussions

Defendants ask the Court to bar any evidence of or argument regarding any settlement or offers of judgment discussions. Sabet does not object to Defendants' motion, so the Court grants Defendants' motion *in limine* number 6.

---

[1] For example, if Wilson discusses being personally responsible for punitive damages, then Sabet could inquire about whether the City is indemnifying him for compensatory damages.

6

7. **Motion to preclude references to the parties' and non-parties' financial circumstances**

Defendants ask the Court to bar any evidence, testimony, or argument regarding the parties' individual wealth or poverty or the financial hardship of non-parties. In support of this motion *in limine*, Defendants argue that such evidence should be considered irrelevant or highly prejudicial under Rules 402 and 403. Sabet says he has no objection but proceeds to list conditions to the motion *in limine* that the Court construes as objections.

Sabet's objections center around tailoring the motion *in limine* to still allow him to present evidence regarding his lost wages and punitive damages claims. Evidence of lost wages is obviously relevant since one of the forms of relief Sabet seeks is lost wages. *See* Doc. 17 at 15–19, 21, 23, 25–27, 29. The Court thus denies Defendants' motion *in limine* to the extent that it could be construed as barring Sabet's evidence of lost wages.

The Court also will deny Defendants' motion *in limine* to the extent that Defendants seek to prevent Sabet from introducing evidence of Wilson's wealth for the purposes of punitive damages. The general rule in punitive damages cases is that a defendant's financial status is relevant because the jury needs to determine what damages award will appropriately punish the defendant. *See, e.g.*, *Kemezy v. Peters*, 79 F.3d 33, 34–36 (7th Cir. 1996) (noting that "plaintiffs who are seeking punitive damages often present evidence of the defendant's wealth" to the jury); *Johnson v. Amazon.com LLC*, No. 17 C 7335, 2019 WL 2323876, at *7 (N.D. Ill. May 30, 2019) ("Because punitive damages are at issue in this case and Defendants' financial status is relevant to that issue, the Court denies Defendants' MILs to exclude evidence or references about Defendants' wealth."); *Roberts v. Shawnee Mission Ford, Inc.*, No. 01 C 2113, 2002 WL 1162438, at *4 (D. Kan. Feb. 7, 2002) ("[I]f a plaintiff has alleged sufficient facts to claim punitive damages against a defendant, information of the defendant's net worth or financial condition is relevant because it can be considered in determining punitive damages"). The Court further does not believe that evidence of Wilson's finances will unduly prejudice the jury. *Cf. Wielgus v. Ryobi Techs., Inc.*, No. 08 CV 1597, 2012 WL 1853090, at *6 (N.D. Ill. May 21, 2012) ("[T]he danger of its probative value being outweighed by its unfairly prejudicial impact is particularly high where a plaintiff references a defendant's financial status for the purpose of invoking the jury's sympathy by conjuring a David versus Goliath scenario.").

The Court grants in part and denies in part Defendants' motion *in limine* number 7. Sabet may present evidence of his lost wages and evidence of Wilson's wealth to allow the jury to appropriately assess any punitive damages it decides to award.

8. **Motion to preclude reference to "code of silence" or "blue wall" within the City's police department or any police department**

Defendants ask the Court to preclude Sabet from presenting evidence, eliciting testimony, or making any arguments regarding a "code of silence," "blue wall," or other phrase that insinuates a police "cover up." Sabet objects that this motion is overly broad and that the Court

7

should allow him to "explore the possibility that the defense witnesses in this case are biased because of loyalty to one another." Doc. 165 at 3.

"Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *United States v. Abel*, 469 U.S. 45, 52 (1984). Indeed, "[a] party's and a witness's common group membership is probative of bias." *Townsend v. Benya*, 287 F. Supp. 2d 868, 876 (N.D. Ill. 2003). To the extent that Sabet challenges the officers and events involved in this case, he may attempt to impeach them by showing that they are biased due to loyalty to each other. *See*, *e.g.*, *Saunders v. City of Chicago*, 320 F. Supp. 2d 735, 740 (N.D. Ill. 2004); *Bruce v. City of Chicago*, 09 C 4837, 2011 WL 3471074, at *4 (N.D. Ill. July 29, 2011); *Galvan v. Norberg*, 04 C 4003, 2006 WL 1343680, at *3 (N.D. Ill. May 10, 2006) (denying motion *in limine* seeking to bar "code of silence" evidence since "evidence or argument of this type can go to the issue of the bias or motivation of witnesses").

However, the Court also recognizes that the phrases "blue wall" and "code of silence" can be unduly prejudicial and constitute a form of propensity evidence. *See Bruce*, 2011 WL 3471074, at *4. Accordingly, Sabet may not use the phrases "blue wall" or "code of silence," and may not introduce any evidence that police officers generally tend to adhere to such policies to cover up misconduct to protect each other. *See id.*; *see also Betts v. City of Chicago*, 784 F. Supp. 2d 1020, 1029 (N.D. Ill. 2011) ("[Plaintiff] may not use the term 'code of silence' or 'blue wall' as these terms are unduly prejudicial, [and] [Plaintiff] may not introduce evidence that law enforcement officers typically adhere to a 'code of silence' or 'blue wall' or seek to cover up misconduct in order to protect fellow officers.").

The Court grants in part and denies in part Defendants' motion *in limine* number 8.

9. **Motion to preclude reference to any individual witness officers' or the Defendant Officers' separation of employment from the City or discipline received while employed**

Defendants ask the Court to bar evidence, testimony, argument, or inference regarding any individual witness officers' or defendant officer's separation of employment from the City or discipline the officers may have received while employed. They argue that the City did not dismiss Wilson or any of the officers allegedly involved in the behavior Sabet alleges from their employment with the City for reasons similar to the ones Sabet claims. Defendants argue that evidence of their conduct or reasons for termination would constitute inadmissible propensity evidence.

Sabet responds that such evidence is admissible for the reasons the Seventh Circuit described in *United States v. Shriver*, 842 F.2d 968, 973–74 (7th Cir. 1988) (stating that "evidence of prior or subsequent acts is admissible if (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue . . . , (3) the evidence is clear and convincing, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice." (internal

quotation marks omitted) (citations omitted)). However, in *United States v. Gomez*, the Seventh Circuit abrogated the test described in *Shriver* and set forth a new framework for the admission of other-act evidence. 763 F.3d 845, 860 (7th Cir. 2014) ("[T]o overcome an opponent's objection to the introduction of other-act evidence, the proponent of the evidence must first establish that the other act is relevant to a specific purpose other than the person's character or propensity to behave in a certain way. Other-act evidence need not be excluded whenever a propensity inference can be drawn. But its relevance to "another purpose" must be established through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case. If the proponent can make this initial showing, the district court must in every case assess whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice and may exclude the evidence under Rule 403 if the risk is too great. The court's Rule 403 balancing should take account of the extent to which the non-propensity fact for which the evidence is offered actually is at issue in the case." (internal citations omitted)). Sabet makes no substantive argument as to why the Court should admit evidence of the officers' separations of employment.

Sabet should come to the pretrial conference prepared to argue why the Court, under *Gomez*, should allow him to present evidence of the involved officers' separations from the City (or stipulate that he will not attempt to offer such evidence). The Court reserves ruling on Defendants' motion *in limine* number 9 until such time.

### 10. Motion to preclude reference to other "bad acts" involving the same parties

The Defendants ask the Court to bar any evidence, testimony, or argument regarding other "bad acts" involving the same parties or attorneys. Sabet contends that such evidence is admissible to impeach witnesses and then to bolster (or further tear down) witness credibility after their character for truthfulness has been attacked (or supported).

As the Court has already noted, character evidence is inadmissible to show that a party acted in accordance with a certain character trait under a given circumstance. *See* Fed. R. Evid. 404(a). Thus, evidence of any of the Defendants' or involved officers' "bad acts" unrelated to the claims Sabet brings here is inadmissible to *prove* that they acted in the manner that Sabet alleges. Of course, such evidence may be admissible under Rule 404(b) if Sabet introduces it for an appropriate purpose. *See* Fed. R. Evid. 404(b)(2) ("This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.").

However, Sabet is correct that the parties may cross-examine witnesses regarding specific instances of bad conduct (but may not introduce extrinsic evidence to prove those events). *See* Fed. R. Evid. 608(b). Thus, the Court will not bar the parties from cross-examining witnesses related to prior instances of specific bad conduct to impeach their credibility.

The Court grants Defendants' motion *in limine* number 10 to the extent that the parties attempt to admit propensity evidence to directly support their arguments, but the Court will allow them to cross-examine witnesses in accordance with Fed. R. Evid. 608(a).

9

11. **Motion to preclude reference to civilian complaints**

Defendants ask the Court to bar any evidence, testimony, or argument related to any civilian complaints, lawsuits, disciplinary proceedings, pending claims, or past claims against Wilson and any other City personnel. Defendants argue that such evidence would constitute propensity evidence, which is inadmissible. Sabet argues that Defendants' motion is overbroad because they fail to provide details of why the complaints would be prejudicial, that complaints or lawsuits can be admitted for purposes other than propensity evidence, and that the "relevance of a particular complaint or lawsuit depends largely on the testimony given and defenses raised at trial." Doc. 165 at 7.

The Court credits Sabet's point that the admissibility of civilian complaints, lawsuits, proceedings, or other claims would depend on the purpose for and context in which they were offered. *See Gomez*, 763 F.3d at 860. Rather than prematurely exclude or admit such evidence, the Court prefers to deal with relevant objections as they arise at trial. Accordingly, the Court reserves ruling on Defendants' motion *in limine* number 11. If Sabet wishes to introduce any complaints, lawsuits, proceedings, or other civilian claims against Defendants, he should inform the Court before doing so to give Defendants the opportunity to raise this objection at that time.

12. **Motion to preclude argument that jury should send a message or punish Defendants**

Defendants ask the Court to forbid Sabet from presenting evidence, procuring testimony, or arguing that the jury should "send a message" to Wilson or the City through their damages award. They argue that such evidence, testimony, or arguments would be "highly prejudicial" and would violate Rule 403. *See* Doc. 158 at 8–9. Sabet argues that the Court should allow him to argue that a punitive damages award would serve as an example to other officers that they should not discriminate based on national origin and religion.

"The standard judicial formulation of the purpose of punitive damages is that it is to punish the defendant for reprehensible conduct and to deter him and others from engaging in similar conduct." *Betts*, 784 F. Supp. 2d at 1033 (citing *Kemezy*, 79 F.3d at 34). However, municipalities are not liable for punitive damages for any of the claims Sabet brings, which are Title VII, § 1983, and Illinois state law claims. *See Passananti v. Cook Cnty.*, 689 F.3d 655, 677 (7th Cir. 2012) ("[U]nder Title VII, . . . [a government, government agency or political subdivision] cannot be held liable for punitive damages."); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[A] municipality is immune from punitive damages under 42 U.S.C. § 1983."); 745 Ill. Comp. Stat. 10/2-102 (no municipal liability for punitive damages for violations of Illinois state law). Sabet therefore cannot argue that the jury should "send a message" to the City through a damages award.

However, individual defendants *are* liable for punitive damages. Given that one of the purposes of allowing punitive damages is to deter future misconduct by non-parties, the Court will allow Sabet to argue to the jury that they "should send a message" to Wilson and other police officials. *See Betts*, 784 F. Supp. 2d at 1034 ("[Plaintiff] will be permitted to argue that he

is attempting to deter the defendant officers and other Chicago police officers from future misconduct."); *see also Saunders*, 320 F. Supp. 2d at 738 (allowing plaintiff to argue that the jury should "send a message" through damages award).

The Court grants in part and denies in part the Defendants' motion *in limine* number 12.

### 13. Motion to permit evidence regarding Sabet's conduct during investigation

Defendants ask the Court to allow them to introduce evidence and testimony regarding Sabet's attitude, work performance, and dishonesty during the City's investigation of his claims. Sabet does not object to Defendants' motion, so the Court grants Defendants' motion *in limine* number 13.

### 14. Motion to bar Dr. Earle Grosvenor's testimony and opinions

Defendants ask the Court to bar Dr. Grosvenor's testimony and opinions due to Sabet's improper disclosure of his curriculum vitae ("CV") and case list under Federal Rules of Civil Procedure 26(a) and 37(c), and because Dr. Grosvenor's opinions fail under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Federal Rule of Evidence 702.

Under Rule 26(a)(2)(B)(iv) and (v), expert witnesses must disclose their qualifications and any publications they authored within the last ten years, as well as a list of all other cases in which they have appeared as an expert witness. Fed. R. Civ. P. 26(a)(2)(B)(iv)–(v). The Rules mandate that courts exclude expert witnesses whose reports do not fully comply with these rules, "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998) ("[T]he sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless."). The Seventh Circuit has left "[t]he determination of whether a Rule 26(a) violation is justified or harmless . . . to the broad discretion of the district court." *Mid–Am. Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1363 (7th Cir. 1996).

The four factors that determine whether failure to comply with Rule 26 is justified or harmless are: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

Defendants argue that Sabet's failure to disclose Dr. Grosvenor's CV and case list was not harmless because it prejudiced them by denying them the ability to properly vet and argue his expert qualifications. They contend that they could not properly assess Dr. Grosvenor's qualifications due to Sabet's non-disclosure. Sabet claims that Dr. Grosvenor's qualifications and cases were fully explored at his deposition, and that Defendants sat on their hands for over four years before bringing the deficient disclosure to his and the Court's attention.

The Court acknowledges Defendants' claim that they were prejudiced because they could not fully vet Dr. Grosvenor's qualifications without the benefit of his CV. Although Sabet

11

argues that Defendants did not suffer because Dr. Grosvenor discussed his background at his deposition, deposition testimony does not cure a Rule 26 violation. *See Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008). This tilts the first element in favor of Defendants. Moreover, the Court thinks that the fourth element, whether the lack of disclosure evinces bad faith or willful behavior, also goes in favor of Defendants. At his deposition, Defendants explicitly reminded Sabet and Dr. Grosvenor that they needed to submit his CV and case list, and Sabet's attorney acknowledged this obligation. *See* Doc. 158-2 at 9:8–22. At best, their failure to pass this information onto Defendants was negligent; at worst, it was bad faith. Either way, Sabet's failure to share the CV and case list after Dr. Grosvenor's deposition tilts the fourth factor in Defendants' favor. Yet the Court is also cognizant of the fact that Defendants took Dr. Grosvenor's deposition in early April 2019, over four-and-a-half years before this Court's ruling on the motions *in limine*. Defendants thus had ample opportunity during the interim period to follow-up with Sabet's counsel regarding Dr. Grosvenor's CV and case list, and take an additional deposition if those documents raised additional questions. At this late date, the Court will not exclude Dr. Grosvenor's testimony for Sabet's technical violation of the Rules that Defendants could have proactively worked to cure long ago.

Instead, the Court thinks that any prejudice or disruption to the trial could be cured by allowing Defendants an additional opportunity to argue that Dr. Grosvenor is not qualified as an expert witness under *Daubert* and Rule 702—indeed, their inability to fully challenge his qualifications is the prejudice against which Defendants complain. Now that Defendants have the benefit of Dr. Grosvenor's CV, which the Court notes is only two pages, *see* Doc. 165 at 14–15, they should have no trouble making a more fulsome argument regarding Dr. Grosvenor's qualifications. Accordingly, the Court reserves ruling on Defendants' motion *in limine* number 14. The parties should appear at the pretrial conference ready to argue whether Dr. Grosvenor was qualified to assess Sabet and diagnose any psychological harms he may have suffered or conditions he may have developed as a result of his harassment.

### 15. Motion to bar Dr. Duane Jarchow's testimony and opinions as irrelevant

Defendants ask the Court to bar Dr. Jarchow's testimony as irrelevant under Federal Rule of Evidence 402.[2] Defendants point to several instances where Dr. Jarchow discussed treating Sabet for back problems and neck pain, *see* Doc. 158-3 at 13:3–6; *id.* at 14:23–25; *id.* at 15:1–3, which they contend are injuries that are irrelevant to Sabet's discrimination claims. Sabet claims that he had a conversation with Dr. Jarchow about his discrimination at work, and discussed the possibility that stress caused by work discrimination could lead to physical manifestations including neck and back pain.

The Court finds that Dr. Jarchow's testimony is not relevant to Sabet's claims. *See* Fed. R. Evid. 402. Sabet did not seek out Dr. Jarchow's treatment for the purpose of correcting any physical symptoms that may have been connected to stress related to discrimination, *see* Doc. 158-3 at 23:17–19 (pain resulted from lifting computer and grappling with suspect), and Dr. Jarchow had only fleeting memory of conversations related to the harassment Sabet experienced at work, *see id.* at 68:12–13 ("[Sabet] *might* have made mention of [harassment] in relating [his

---

[2] Defendants do not argue that he should be barred from testifying as an expert under *Daubert* or Rule 702.

treatment] to the workman's comp." (emphasis added)). Moreover, the Court finds it notable that Dr. Jarchow equivocated on whether the stress Sabet experienced due to his treatment at work resulted in light jaw pain for which he treated Sabet. *See id.* at 71:4–72:6 (saying "[i]t's possible" that workplace stress could cause nighttime jaw clenching but admitting to "not know" whether Sabet's jaw pain was due to jaw clenching); *see also Liebhart v. SPX Corp.*, No. 16 C 700, 2018 WL 1583296, at *3–4 (W.D. Wis. Mar. 30, 2018) (barring expert testimony as unhelpful due to expert's equivocation), *rev'd on other grounds*, 917 F.3d 952 (7th Cir. 2019). To the extent that Sabet believes Dr. Jarchow's testimony is relevant to prove that he was telling other people about the discrimination he experienced, Sabet will have other witnesses who can testify to this fact, making Dr. Jarchow's testimony needlessly cumulative. *See* Fed. R. Evid. 403. Accordingly, the Court grants Defendants' motion *in limine* number 15.

Date: October 17, 2023                                         /s/ Sara L. Ellis